**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **SIR FABIAN FREEMAN** on behalf of himself and all others similarly situated, | ) | |
| Plaintiff, | ) | Case No.: ________________ |
| v. | ) | **JURY TRIAL DEMANDED** |
| **CITY OF BEDFORD,** | ) | **CLASS ACTION** |
| Defendant. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT-CLASS ACTION

**COMES NOW** Plaintiff, Sir Fabian Freeman ("**Plaintiff**"), on behalf of himself and all those similarly situated, by and through Plaintiff's attorneys, and brings the following action against the Defendant, City of Bedford, ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**").

## PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendant for violations of the FCRA.

2. Defendant obtained information concerning Plaintiff from a consumer reporting agency named First Check Applicant Screening.

3. Defendant paid a fee for the information it obtained concerning Plaintiff.

4. The information obtained concerning Plaintiff was a "Consumer Report" (as the term "Consumer Report" is defined pursuant to the FCRA).

5. Defendant relied on information in a Consumer Report to take an adverse employment action against Plaintiff (refusal to hire), and on information and belief, Defendant relies on similar information from Consumer Reports to make decisions regarding other prospective or current employees, including, in whole or in part, as a basis for adverse employment

actions; such as refusals to hire and/or termination.

6. Defendant took adverse action based in whole or in part on the Consumer Report and failed to provide Plaintiff the report prior to the adverse action.

7. In taking adverse action, without first providing a copy of the Consumer Report, Defendant violated section 1681b(b)(3) of the FCRA.

8. Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA.

## PARTIES

9. Plaintiff is a resident of Grand Prairie, Texas. Plaintiff is a member of the Putative Classes defined below.

10. Defendant, the City of Bedford is a municipal entity created and authorized under the laws of the state of Texas. The City of Bedford has over 200 employees. The City of Bedford can be served by serving a summons on Bryn Meredith, the City Attorney, at 2000 Forest Ridge, Building A, Bedford Texas, 76021.

## JURISDICTION AND VENUE

11. This court has jurisdiction over Plaintiff's FCRA claim pursuant to 28 U.S.C. § 1331.

12. Venue is proper in this Court pursuant to § 28 U.S.C. § 1391. Plaintiff resides in Texas, applied to work for Defendant in this District, his claims arise in substantial part in this District, and Defendant is located in the District.

## LEGAL AUTHORITY

13. Section 1681b(b)(1) of the FCRA dictates when a consumer reporting agency may provide a Consumer Report to an employer for employment purposes as follows:

> (A) the person who obtains such report from the agency certifies to the agency that—
>
> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>
> (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) [1] of this title.

14. The purpose of the FCRA certification is to have the consumer reporting agency act as a gatekeeper who protects the consumer's personal information and before releasing the personal information to an employer requires the employer to certify that the protections the FCRA affords consumers will be afforded to the consumer.

15. Absent the certification from the employer, the consumer reporting agency is legally required to deny access to the consumer's personal information.

16. Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain Consumer Reports about employees or prospective employees as follows:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that

person.

17. The purpose of the disclosure is to place the consumer on notice that a Consumer Report may be obtained as part of the application process.

18. The purpose of the authorization is to allow the consumer to consent to the lawful use of the consumer's personal information for limited purposes.

19. Section 1681b(b)(3) regulates the conduct of any person who used a Consumer Report to take an adverse action based in whole or in part on the Consumer Report against any employee or prospective employee as follows:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

20. The purpose of Section 1681b(b)(3) is to provide an employee or prospective employee a reasonable amount of time to review the Consumer Report, to address any incomplete, inaccurate, or misleading information in the Consumer Report, to allow the target of the Report to notify the employer of the errors or misleading part of the Consumer Report before the adverse action is taken. and to discuss the contents of the Consumer Report with the prospective employer.

## FACTUAL ALLEGATIONS

21. Plaintiff applied online for employment with Defendant in or about October of 2023.

22. Plaintiff received an email with multiple possible dates for an interview, and Plaintiff responded with a date selection.

23. Plaintiff had an in-person interview on or about October 5, 2023, with Stephanie, Flo, and Abbey, employees of Defendant.

24. Following the interview, Plaintiff received a phone call from Carmen, an employee of Defendant, and he was offered a job.

25. Plaintiff received the onboarding paperwork on approximately October 12, 2023, by email and returned the documents that same day.

26. The onboarding documents did not disclose that the Defendant would obtain personal health information.

27. Defendant's disclosure did not disclose that Plaintiff's medical information would be obtained.

28. Defendant's disclosure sets forth specific forms of information that would be requested, but it does not mention personal health information.

29. Defendant's disclosure sets forth specific forms of information that would be requested, but it does not mention medical information.

30. Plaintiff's authorization was restricted to the "above mentioned information," which did not include medical information or personal health information.

31. Defendant's disclosure did not include personal health information and/or medical information as forms of information that the Defendant would obtain.

32. Plaintiff did not provide Defendant express written consent to obtain medical information or personal health information.

33. On information and belief, Defendant received Plaintiff's Consumer Report on October 19, 2023.

34. On October 19, 2023, Plaintiff received an email from Stephanie Ayers denying

him the job based on the background check.

35. The Consumer Report obtained by Defendant included personal health information as defined by Texas law.

36. Plaintiff was not provided a copy of the Consumer Report prior to the adverse action.

37. Plaintiff has never received a copy of his Consumer Report from Defendant.

38. Defendant's failure to timely provide the Consumer Report prevented Plaintiff from addressing misleading, incomplete or inaccurate information.

39. On October 19, 2023, Plaintiff sent an email attempting to find out why he was denied; provided information that he did not have any criminal convictions; and requested a copy of the background check.

40. Defendant did not respond to Plaintiff's email seeking to find out what information was the basis for the adverse action.

41. Plaintiff also sought a copy of the background check from First Check Applicant Screening after the adverse action.

42. On October 20, 2023, Plaintiff attempted to follow up with Stephanie, Defendant's employee who had communicated the adverse action, by email and phone but did not receive a response to either communication.

43. Plaintiff attempted to follow up multiple other times by phone with Defendant but never received a response.

44. Plaintiff was unable to find employment until January of 2024.

45. Defendant's withdrawal of the job offer cost Plaintiff a salary, benefits, and pension.

46. Denying Plaintiff employment because of information in his Consumer Report is an adverse action as defined pursuant to the FCRA, which creates an injury in law.

47. Defendant's actions fundamentally undermined the fairness and transparency the FCRA was designed to protect, and it caused Plaintiff to suffer both tangible losses—including the loss of a job opportunity—and intangible injuries such as loss of dignity, uncertainty about the future, and frustration over being denied a fair process.

48. Defendant's failure to abide by the FCRA's requirements accompanied with the withdrawal of the offer of employment caused Plaintiff emotional distress, anxiety and duress.

49. Defendant's failure to provide Plaintiff with a copy of the consumer report and a summary of rights under the FCRA prior to taking adverse employment action deprived Plaintiff of a critical opportunity to understand his rights and review, contest, explain and/or dispute the information being used against him. As a direct result of this failure, Plaintiff was left confused and unaware of the basis for the denial of employment, how to challenge the action, or if he could challenge the action. Plaintiff's lack of knowledge regarding his rights created significant emotional distress and anxiety.

50. On information and belief, Defendant obtained a Consumer Report concerning Plaintiff from First Check Applicant Screening for employment purposes.

51. On information and belief, First Check Applicant Screening required Defendant to certify pursuant to 15 U.S.C. §1681b(b)(1) before obtaining a Consumer Report that the FCRA protections provided by 15 U.S.C. §1681b(b)(2) and §1681b(b)(3) would be followed by the Defendant.

52. Defendant's actions have denied Plaintiff the opportunity to review, contest, or explain the contents of the Consumer Report.

53. Plaintiff would not have authorized the Defendant to procure his Consumer Report if he had known that the Defendant would not comply with the mandates of the FCRA.

54. Plaintiff would not have allowed the Defendant access to his personal health information if the Defendant had disclosed that information would be obtained.

55. Taking an adverse action based on Plaintiff's Consumer Report without first providing a copy of the Consumer Report to Plaintiff exceeded the limited consent provided by Plaintiff, and therefore Defendant violated the FCRA.

56. Defendant exceeded Plaintiff's limited consent when the information contained in the Consumer Report was used in a manner that violated the law.

57. Plaintiff only allowed access to his Consumer Report for employment purposes.

58. The illegal use of Plaintiff's personal information is akin to a breach of trust.

59. Defendant had a legal obligation akin to a trustee of Plaintiff's Consumer Report to act in the best interests of Plaintiff by allowing him an opportunity to review the personal and private information prior to any adverse action.

60. Defendant breached Plaintiff's trust by failing to fulfill its obligations in a way that violated the terms of the law and the authorization which set standards of conduct expected of Defendant.

61. Defendant would not have had access to Plaintiff's private and personal information without obtaining a copy of the report prior to taking any adverse action.

62. The illegal use of Plaintiff's personal information is an injury in fact.

63. Defendant's actions deprived Plaintiff of his right to challenge and/or dispute the information in the Consumer Report.

64. Plaintiff lost the opportunity and ability to explain the information in the Consumer

Report before the adverse action.

65. On information and belief, Defendant certified to the Consumer Reporting Agency that the Consumer Report was obtained for employment purposes. Pursuant to the FCRA, Consumer Reporting Agencies may not provide a third-party entity with a Consumer Report without first receiving a 15 U.S.C. §1681b(b)(1) certification.

66. On information and belief, Defendant certified to First Check Applicant Screening that it would not use Plaintiff's Consumer Report in violation of any applicable federal or state equal employment law or regulation.

67. On information and belief, Defendant certified to First Check Applicant Screening that it would abide by 15 U.S.C. §1681b(b)(3) if that section became applicable.

68. On information and belief, Defendant contractually agreed to abide by 15 U.S.C. §1681b(b)(3) (i.e., to provide a copy of the report to the applicant prior to taking adverse action) and other notice provisions if allowed access to Plaintiff's information.

69. Defendant's certification was false because it did not abide by the FCRA adverse action requirements.

70. Defendant violated the provisions of 15 U.S.C. §1681b(b)(3) when it failed to provide Plaintiff with a copy of his Consumer Report before taking adverse action.

71. On information and belief, First Check Applicant Screening would not have provided Defendant access to Plaintiff's Consumer Report if Defendant had failed to certify that it would abide by the FCRA adverse action procedures.

72. Defendant's actions deprived Plaintiff of a meaningful opportunity to invoke the discretion of the decision maker before termination.

73. Defendant violated its statutory and contractual obligations by systematically

violating the provisions of the FCRA despite having received the benefits of obtaining regulated information concerning Plaintiff.

74. Defendant exceeded any authorization provided by Plaintiff.

75. Any authorization provided by Plaintiff was akin to a contract in which Plaintiff allowed Defendant access to his personal information expecting the Defendant to provide the protections ensured by the FCRA in exchange for its access to his private and personal information.

76. Defendant's procurement of Plaintiff's Consumer Report violated the good faith and fair dealing required in every contract.

77. Defendant breached the parties' covenant of good faith and fair dealing when it used Plaintiff's alleged authorization to procure his Consumer Report and then failed to provide him with a copy of the Consumer Report.

78. Defendant breached the parties' covenant of good faith and fair dealing when it used Plaintiff's alleged authorization to procure his Consumer Report and then failed to provide him with an opportunity to review, dispute, explain, and/or address the information in the Consumer Report.

79. Plaintiff did not receive the protections he was entitled to by law and contract because of Defendant's actions.

80. Defendant is aware of the FCRA because, on information and belief, Defendant executed a certification with the Consumer Reporting Agency that requires Defendant to abide by the requirements of the FCRA.

81. Defendant knew that it must comply with the FCRA, but Defendant failed to comply with such obligations.

82. Defendant's violations of the FCRA combined with its knowledge of the

requirements of the FCRA are evidence that Defendant's violations were reckless.

83. The way Defendant took adverse action against Plaintiff is consistent with its policies and procedures.

## CLASS ACTION ALLEGATIONS

84. Plaintiff asserts the following proposed classes:

**ADVERSE ACTION CLASS:** All natural persons residing within the United States and its Territories who were the subject of a consumer report used by Defendant for employment purposes within the previous five (5) years before Plaintiff filed this Complaint through the date of class certification, and suffered an adverse employment action by Defendant, but who were not provided a copy of the report and/or a written summary of their rights under the FCRA before the adverse action notice.

**CERTIFICATION CLASS:** All individuals in the United States who were the subject of one or more Consumer Reports obtained by Defendant after Defendant falsely represented to those individuals that it would comply with 15 U.S.C. §1681b(b)(3), for the period of the previous two years prior to the date of filing through the date of class certification.

**AUTHORIZATION CLASS:** All individuals in the United States who were the subject of one or more Consumer Reports containing personal health information obtained by Defendant but from whom the authorization obtained by Defendant did not include express consent to obtain personal health information, for the period of the previous two years prior to the date of filing through the date of class certification.

**DISCLOSURE CLASS**: All employees or prospective employees of Defendant in the United States who were the subject of a Consumer Report that included personal health information that was sought by the Defendant for the period of the previous two years prior to the date of filing through the date of class certification.

### Numerosity

85. The proposed classes are so numerous that joinder of all class members is impracticable. Defendant, which employs more than 250 people, regularly obtains and uses information in Consumer Reports to conduct background checks on prospective employees and existing employees. Defendant regularly obtains Consumer Reports via false certifications and disclosures and relies on the information therein, in whole or in part, as a basis for adverse employment action. Given the nature of the Defendant's business, Plaintiff believes that during

the relevant time period, at least 50 individuals would fall within the definition of each of the classes.

**Common Questions of Law and Fact and Predominance**

86. Virtually all the issues of law and fact in this class action are common, and they predominate over any questions affecting only individual class members. Among the questions of law and fact common to the classes are:

a. Whether Defendant uses the information in individuals' Consumer Reports to take adverse actions;

b. Whether Defendant violated the FCRA by taking adverse actions against Plaintiff and other Putative Class members based on information in Consumer Reports without first providing copies of the reports;

c. Whether Defendants obtained Consumer Reports via false 15 U.S.C. §1681b(b)(1) certifications;

d. Whether Defendant's actions exceeded the scope of the authorizations;

e. Whether the Defendant disclosed the complete scope of the personal information that would be obtained;

f. Whether Defendant's actions were reckless; and

g. The proper measure of damages.

**Typicality**

87. Plaintiff's claims are typical of the members of the proposed classes. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members. Defendant uses the same disclosure and authorization forms in the onboarding process. Defendant typically uses Consumer Reports to take adverse actions, but it fails to provide applicants copies of the reports before taking adverse employment actions based on information contained in the reports. Additionally, before being provided with the Consumer Reports, Defendant had certified they would be used for employment purposes and that it would abide by §1681b(b)(2) and (3), but it

did not. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

**Adequacy of Representation**

88. Plaintiff, as representative of the classes, will fairly and adequately protect the interests of the classes as he has no interests that conflict with or are antagonistic to the interests of the class members, and he is willing and able to perform his duties as a class representative. Plaintiff has retained attorneys competent and experienced in FCRA class action litigation. No conflict exists between Plaintiff's counsel and the members of the classes.

**Superiority**

89. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, in part because common questions of law and fact overwhelmingly predominate over individual questions that may arise.

90. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against the Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for duplicative litigation that might result in inconsistent judgments concerning the Defendant's practices. Moreover, management of this action as a class action will not present any difficulties. In the interests of justice and judicial efficiencies, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

91. Plaintiff intends to send notice to all members of the Putative Classes to the extent

required by Rule 23 of the Federal Rules of Civil Procedure. The names and address of the potential class members are available from Defendant's records.

**Count I**
**Adverse Action**

92. Plaintiff incorporates the foregoing paragraphs 9-91 as if fully set forth herein.

93. Defendant obtained Consumer Reports concerning Plaintiff and the Adverse Action Class.

94. Defendant used the Consumer Reports to take adverse action against Plaintiff and the Adverse Action Class.

95. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with copies of their reports before taking adverse actions.

96. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a reasonable time to address the information in their reports.

97. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a reasonable time to dispute their reports.

98. Plaintiff and the Adverse Action Class were left unaware of the information in their Consumer Reports because Defendant never provided them copies of their reports.

99. Had the Defendant complied with the FCRA, Plaintiff and the Adverse Action Class would have been given time to review, explain, dispute and/or otherwise address the information contained in their Consumer Reports.

100. Plaintiff and the Adverse Action Class would have never permitted Defendant to obtain copies of their Consumer Report had they known that Defendant employed a policy to take adverse actions in violation of the FCRA.

101. Plaintiff and the Adverse Action Class would have never permitted Defendant to

obtain a copy of their Consumer Report had they known that Defendant would deny them the opportunity to dispute their Consumer Reports before any adverse actions.

102. Defendant's failure to comply with the unambiguous mandates of the FCRA injured Plaintiff and the Adverse Action Class.

103. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Adverse Action Class.

104. Defendant's reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice through outside employment counsel;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

c. 15 U.S.C. §1681b(b)(1) required the Defendant to certify that the protections of 15 U.S.C. §1681b(b)(3) would be followed; and

d. Defendant entered a contract in which they contractually agreed to abide by the FCRA's adverse action requirements.

105. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

106. Plaintiff and the Adverse Action Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

107. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

## COUNT II
## Authorization Violations

108. Plaintiff and the Authorization Class incorporate the foregoing paragraphs 9-91 as if fully set forth herein.

109. Defendant obtained a Consumer Report concerning Plaintiff and Authorization Class under false pretenses.

110. Plaintiff and the Authorization Class would have never permitted Defendant to obtain a copy of their Consumer Report had they known that Defendant was obtaining Consumer Reports in violation of the FCRA.

111. Plaintiff and the Authorization Class would never have permitted Defendant to obtain a copy of their Consumer Reports had they known that Defendant's alleged disclosures were misleading.

112. Plaintiff and the Authorization Class would never have permitted Defendant to obtain a copy of their Consumer Reports had they known that Defendant's alleged authorizations were misleading.

113. Plaintiff and the Authorization Class would have never authorized Defendant to obtain a copy of their Consumer Reports if had they had known that Defendant would violate provisions of the FCRA, was obtaining Consumer Reports in violation of the law, and had a policy, pattern, and practice to take adverse actions in violation of the FCRA.

114. Defendant's actions exceeded the scope of Plaintiff's and the Authorization Class's consent.

115. Defendant obtained protected health information on Plaintiff and the Authorization Class.

116. Plaintiff and the Authorization Class did not give express written consent to obtain their medical information.

117. Plaintiff and the Authorization Class did not give express written consent to obtain their personal health information.

118. Defendant's foregoing violations were reckless.

119. Defendant acted in deliberate or reckless disregard of its obligations and rights of Plaintiff and the Authorization Class under the provisions of the FCRA. Defendant's willful conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice through outside employment counsel;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. 15 U.S.C. §1681b certification, addresses the requirement of obtaining and using a Consumer Report.

120. Plaintiff and the Authorization Class are entitled to actual damages of back pay, emotional distress and anxiety, and reputational harm.

121. Plaintiff and the Authorization Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

122. Plaintiff and the Authorization Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

123. Plaintiff and the Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

**Count III**
**Disclosure Violation**

124. Plaintiff and the Disclosure Class incorporate the foregoing paragraphs 9-91 as if fully set forth herein.

125. Defendant violated the FCRA by using a form to procure Consumer Reports that is

misleading and deceptive.

126. Defendant violated the FCRA by using a form to procure Consumer Reports that is confusing.

127. Defendant violated the FCRA by using a disclosure that fails to disclose the complete scope of the information the Defendant would obtain.

128. Defendant violated the FCRA by using a form to procure Consumer Reports that failed to properly place Plaintiff and the Disclosure Class on notice of the complete scope of the intrusion into their privacy.

129. Defendant violated the FCRA by using a form to procure Consumer Reports that a reasonable person would not fully understand the full scope of the Defendant's intrusion into the person's privacy.

130. The foregoing violations were willful or in reckless disregard of the law.

131. Defendant's willful conduct is reflected by, among other things, the following facts:

a. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

b. Defendant has access to legal advice through outside employment counsel;

c. Defendant's form does not lists all information that would be sought;

d. Defendant's form was misleading and deceptive;

e. Defendant failed to obtain an authorization for the procurement of a medical information in writing as mandated by the FCRA; and

f. 15 U.S.C. §1681-1681y, requires credit agencies to provide notice to users of Consumer Reports of the users legal obligations under the FCRA prior to the procurement of Consumer Reports.

132. Plaintiff and the Disclosure Class members are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15

U.S.C. § 1681n(a)(1)(A).

133. Plaintiff and the Disclosure Class members are also entitled to punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

134. Plaintiff and the Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## Count IV
## Certification Violations

135. Plaintiff and the Certification Class incorporate the foregoing paragraphs 9-91 as if fully set forth herein.

136. Consumer Reporting Agencies are legally prohibited from providing employment related Consumer Reports without first obtaining the certifications required by 15 U.S.C. §1681b(b)(1).

137. Prior to obtaining an applicant's Consumer Report for employment purposes Defendant was required to provide to the Consumer Reporting Agency certification of the purpose and that FCRA protections would be abided by per 15 U.S.C. §1681b(b).

138. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain an applicant's Consumer Report until they have certified that they have complied with the mandates of 15 U.S.C. §1681b(b)(2).

139. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain an applicant's Consumer Report until they have certified that they will comply with the mandates of 15 U.S.C. §1681b(b)(3) if that section becomes applicable.

140. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain an applicant's Consumer Report until they have certified that information from the Consumer

Report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

141. On information and belief, prior to obtaining a Consumer Report concerning Plaintiff and the Certification Class, Defendant certified that it had complied with 15 U.S.C. §1681b(b)(2) and would comply with 15 U.S.C§1681b(b)(3) if that section became applicable.

142. On information and belief, prior to obtaining a Consumer Report concerning Plaintiff and the Certification Class, Defendant also certified that information would not be used in violation of any applicable Federal or State equal opportunity employment law or regulation.

143. Defendant knew that it would not comply with the mandates of 15 U.S.C. §1681b(b)(1) prior to obtaining a copy of Plaintiff's and the Certification Class's Consumer Reports.

144. Defendant therefore made false certifications to obtain and use Consumer Reports for employment purposes.

145. The provisions of 15 U.S.C. §1681b(b)(1) are intended to protect the privacy rights of Plaintiff and the Certification Class.

146. The provisions of 15 U.S.C. §1681b(b)(1) are intended to protect Plaintiff's and the Certification Class's statutory right to review protected information.

147. Plaintiff and the Certification Class were injured by the Defendant's practice of obtaining Consumer Reports via false certifications.

148. Absent the Defendant's false certifications, Defendant would not have gained access to Plaintiff's and the Certification Class's Consumer Reports, and Plaintiff and the Certification Class would not have been denied employment.

149. Plaintiff and the Certification Class would never have permitted Defendant to

obtain copies of their Consumer Report if had they known that Defendant would violate the provisions of the FCRA, was obtaining Consumer Reports in violation of the law, and had a pattern, policy, and practice of taking adverse action in violation of the FCRA.

150. Moreover, Plaintiff and the Certification Class would have never permitted the Defendant to obtain a copy of their Consumer Report had they known that Defendant would deny them the opportunity to dispute their Consumer Reports before any adverse action.

151. Defendant's failure to comply with the unambiguous mandates of the FCRA injured Plaintiff and the Certification Class.

152. The foregoing violations were taken in reckless disregard of the law.

153. Defendant acted in deliberate or reckless disregard of its obligations and of Plaintiff's and the Certification Class's rights.

154. Defendant's reckless conduct is reflected by, among other things, the following:

a. Defendant has access to legal advice through outside employment counsel;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. Defendant made multiple certifications per 15 U.S.C. §1681b(b)(1) that it purposely violated.

155. Plaintiff and the Certification Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

156. Plaintiff and the Certification Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

157. Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

**WHEREFORE,** Plaintiff respectfully requests that this Court issue an Order for the following:

a. Holding that this action may proceed as a class action under Rule 23(b) (3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

c. Directing proper notice to be mailed to the Putative Classes at the Defendant's expense;

d. Finding that the Defendant committed multiple, separate violations of the FCRA for each Putative Class Member;

e. Finding that the Defendant acted recklessly in deliberate or reckless disregard of Plaintiff and the Putative Class Member's rights and its obligations under the FCRA;

f. Finding Plaintiff is entitled to actual damages of back pay, emotional distress and anxiety, and reputational harm.

g. Awarding statutory damages and punitive damages as provided by the FCRA;

h. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

i. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## Demand for Jury Trial

Plaintiff hereby demands a jury trial on all causes of action and claims.

Dated October 17, 2025.

Respectfully submitted,

/s/ Roger L. Mandel

Roger L. Mandel
Texas Bar No. 12891750
Law Offices of Roger L. Mandel
3416 Pelham Rd.
Fort Worth, TX 76116
Phone: 214-762-1036
rogerlmandel@gmail.com

Jayson A. Watkins*
jwatkins@sirillp.com
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: 212.532.1091
**Pro Hac Vice* Forthcoming

*ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASSES*